**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TRADE WEST CONSTRUCTION, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEEERS,<br><br>*Defendants.* | Case No. 1:24-3291 (RDM) |

**MEMORANDUM OPINION AND ORDER**

In the summer of 2022, the Portland District of the U.S. Army Corps of Engineers ("Corps") solicited sealed bids from prospective contractors to complete the Tillamook South Jetty Repairs Project in Tillamook County, Oregon. Three contractors submitted sealed bids: J.E. McAmis, SEA Construction, and Trade West Construction. Trade West, the plaintiff in this case, submitted the winning bid. More than a year after bidding concluded, Trade West submitted a Freedom of Information Act ("FOIA") request to the Corps seeking disclosure of the sealed bids of its two competitors, including all supporting documentation. The Corps denied the request, invoking FOIA Exemption 3, and Trade West filed an administrative appeal.

While its administrative appeal was still pending, Trade West filed this case seeking to compel disclosure of the bids. Trade West subsequently prevailed in part in its administrative appeal, and the Corps released heavily redacted versions of the requested bids, invoking FOIA Exemptions 3, 4, and 6. Trade West now moves for summary judgment, arguing that the Corps

improperly invoked Exemptions 3 and 4, and the Corps cross-moves for summary judgment defending its application of those exemptions.[1]

For the reasons that follow, the Court will **GRANT** in part and **DENY** in part Trade West's motion for summary judgment and will **GRANT** in part and **DENY** in part the Corps' cross-motion. The Court concludes that Exemption 3 is inapplicable to the bids at issue, but that Exemption 4 applies to significant portions of the redacted material. Specifically, the Court concludes that the confidential commercial information submitted by SEA Construction and J.E. McAmis in their sealed bids falls within the scope of Exemption 4. Because the Court further concludes that the Corps has made a sufficient showing of foreseeable harm, the Court holds that those portions of the sealed bids are exempt from disclosure under FOIA. The Court also concludes, however, that the Corps failed to release at least some segregable material and will, therefore, require the Corps to release all non-exempt, reasonably segregable material.

## I. BACKGROUND

### A. Factual Background

On July 31, 2022, the Portland District of the Corps issued Solicitation No. W9127N22B0007 ("Solicitation"), seeking bids for the Tillamook South Jetty Repairs project in Tillamook County, Oregon. Dkt. 18-2; Dkt. 23-7. The solicitation estimated the magnitude of the project at somewhere between $25 and $100 million dollars. Dkt. 18-2 at 3. Given the scale and complexity of the project, the Solicitation explained that "the Government is using special standards of responsibility for this procurement," and it required interested bidders to submit documentation demonstrating their ability to meet certain "DEFINITIVE RESPONSIBILITY

[1] Trade West does not challenge the handful of redactions that the Corps made pursuant to Exemption 6, which simply omits the names and titles of signatories.

CRITERIA." *Id*. at 17. Bidders were required to submit (1) proof of completion of "one jetty repair project on the Pacific coast . . . with a total contract value greater than $15M performed within the last 15 years" involving "individual stones weighing at least 22 tons;" (2) "documentation, such as a signed agreement with or letter of commitment from a quarry or quarries, demonstrating that the bidder will be able to obtain a sufficient quantity of jetty stone meeting the contract requirements;" and (3) documentation of equipment capabilities needed to place and manipulate 25-ton stones, including "make, model and load charts for planned equipment." *Id.* at 17–18. The Solicitation required submission of this information "prior to award" and cautioned that any bidder failing to do so would be "determined non-responsible and ineligible for award." *Id*. at 17.

The Corps contends, and Trade West does not dispute, that these definitive responsibility criteria required bidders to submit more information than in a typical sealed bid. That is, the Solicitation did not merely require "price bid and standard bid forms" but also required submission of "substantial, proposal-style technical and management content." Dkt. 23-1 at 20. The Corps explains that this additional material (hereinafter, the "definitive responsibility material") is "normally associated with and frequently encountered in negotiated procurements," and is "not typical or usual" in sealed bid procurements. Dkt. 23-3 at 3.

The Solicitation made clear that the procurement would be conducted by sealed biding. The third page of the Solicitation includes a checkbox indicating that the "TYPE OF SOLICITATION" is a "SEALED BID," rather than a "NEGOTIATED (RFP) [request for proposal]." Dkt. 18-2 at 3. The sealed bidding process is governed by Federal Acquisition Regulation ("FAR") Part 14, codified at 48 C.F.R. Part 14. *See* Dkt. 18 at 6; Dkt. 23-1 at 6. As relevant here, FAR Part 14 provides that sealed bids shall be "opened at the time and place stated

in the solicitation for the public opening of bids." 48 C.F.R. § 14.101(c); *see also* §§ 14.402-1(a) (providing that the bid opening officer shall "personally and publicly open all bids," "if practical, read the bids aloud to the persons present," and "have the bids recorded"), 14.402-1(c) (permitting "[e]xamination of bids by interested persons" provided it "does not interfere unduly with the conduct of Government business"). The FAR also requires that bid entries be recorded on one of two abstract forms—a Standard Form 1409 (Abstract of Offers), or an Optional Form 1419 (Abstract of Offers-Construction). *See* 48 C.F.R. § 14.403(a). "Where bid items are too numerous to warrant complete recording of all bids, abstract entries for individual bids may be limited to item numbers and bid prices." *Id.* The abstracts are "available for public inspection," subject to certain restrictions: for instance, the "abstracts shall not contain information regarding failure to meet minimum standards of responsibility." 48 C.F.R. § 14.403(b).

In keeping with these requirements, the Solicitation indicated that all sealed bids would be opened during a telephonic conference on the due date of August 31, 2022. Dkt. 18-2 at 3, 17. At that conference, the Corps opened the three timely bids that it had received. Dkt. 23-3 at 6 (Johnson Decl. ¶ 7). Only the name and total bid price of each bidder were read aloud. *Id.* The Corps then compiled the name and price specified by each bidder "into a bid abstract that was posted publicly on SAM.gov." *Id.* A copy of this bid abstract appears in each of the parties' summary judgment submissions. Dkt. 18-8; Dkt. 23-7. The abstract consists of a single-page spreadsheet listing the names, addresses, bid security amounts, and unit price information of each of the three bidders. Dkt. 18-8; Dkt. 23-7. The record includes no evidence of any other publication or release of material contained in the competing bids.

**B. Procedural History**

On November 9, 2023, more than a year after the bids were unsealed, Trade West submitted a FOIA request to the Corps' Portland District, requesting complete copies of the bids

submitted by its two competitors. Dkt. 1-1. In a follow-up email on January 18, 2024, Trade West clarified that it sought:

> every piece of paper (or information submitted electronically) submitted by a bidder in response to the solicitation (the entire bid) on or before the bid opening date. This includes not only the pricing sheets but also any other documents showing compliance with solicitation requirements (definitive responsibility criteria may have been submitted with some of the bids). This is public information as the bids were published in their entirety (or were required to be published) pursuant to FAR 14.402-1. We expect to have released the entire bid package submitted by each bidder.

Dkt. 1-2 at 2.

On February 22, 2024, the Corps' District Counsel, Rymn Parsons, denied Trade West's FOIA request, stating that the requested materials included "those of types the release of which would customarily be prohibited by 10 U.S.C. § 3309 and 41 U.S.C. § 4702." Dkt. 1-3 at 2. Because "FOIA Exemption 3 exempts from release records that are barred from disclosure by statute," Parsons denied the request in full. *Id.*

Trade West timely appealed Parsons' denial to the Corps' District FOIA Officer, Keith Offel. Dkt. 1-4. After several months had passed without a response, Trade West filed the pending FOIA suit. Dkt. 1. Then, on March 27, 2025, the Corps sent Trade West a letter indicating that, "[u]pon further review," the Corps had decided to release "two additional records" that are responsive to Trade West's request. Dkt. 18-3 at 1. As the letter further explained, and as evident from the Corps' production, the Corps redacted large portions of these records pursuant to FOIA Exemptions 3 and 4, and also redacted certain names and titles pursuant to FOIA Exemption 6. *See* Dkt. 18-3, 18-4, 18-5. Indeed, with the exception of line-item pricing, all of the information provided by the bidders on the bid forms—including their definitive responsibility materials—was redacted. Dkt. 18-4, 18-5. The Corps offered the following explanation for the redactions:

> You will note that these records have been partially redacted based on FOIA Exemption 3, which authorizes withholding information protected by another statute, in this case, 10 U.S.C. § 3309 and 41 U.S.C. § 4702. These records are also partially redacted based on FOIA Exemptions 4 and 6, which authorize withholding confidential business information and privacy related information.

Dkt. 18-3 at 1.

On May 23, 2025, the Corps produced a *Vaughn* Index identifying each redaction by page number and providing a brief justification for each. *See* Dkt. 18-6; *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (requiring government to submit an index itemizing specific FOIA exemptions claimed for requested materials). The *Vaughn* index invokes FOIA Exemption 3 as to every redaction, FOIA Exemption 4 as to most of the redactions, and FOIA Exemption 6 as to a handful of minor redactions. *See* Dkt. 18-6.

Unsatisfied with this response, Trade West has now moved for summary judgment, Dkt. 18, and the Corps has opposed that motion and has cross-moved for summary judgment, Dkt. 23. In support of its opposition and cross-motion, the Corps also submitted declarations from SEA Construction and J.E. McAmis opposing disclosure of their respective bids and representing that the bids include "commercial/financial and competitively sensitive" information, which they shared with the Corps "with the understanding that it would be kept private." Dkt. 25-1 at 2, 4 (Vandegrift Decl. ¶¶ 5, 11); *see also generally* Dkt. 25-2 (Buckman Decl.). Both firms maintain that disclosure of confidential commercial information contained in the bids would cause them significant competitive harm. Dkt. 25-1; Dkt. 25-2.

The parties' cross-motions are now ripe for resolution. *See* Dkts. 26, 28.

## II. LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 133 (D.D.C. 2013) (citation modified). A

court may grant summary judgment if there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

FOIA requires federal agencies to make certain records "promptly available to any person" upon request, 5 U.S.C. § 552(a)(3)(A), unless one of nine exemptions applies, § 552(b). These exemptions "are explicitly made exclusive" and "must be narrowly construed." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015) (quoting *Milner v. Dept. of Navy*, 562 U.S. 562, 565 (2011)). Thus, when an agency withholds requested documents, it bears the burden of justifying its decision by establishing that an exemption applies. *Id.*; *see Nat'l Sec. Couns.*, 960 F. Supp. 2d at 132 ("When an agency's response to a FOIA request is to withhold responsive records, either in whole or in part, the agency 'bears the burden of proving the applicability of claimed exemptions.'" (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011))). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption," and "is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "The government may satisfy its burden of establishing its right to withhold information from the public by submitting appropriate declarations and, where necessary, an index of the information withheld." *Nat'l Sec. Couns.*, 960 F. Supp. 2d at 132 (citation modified).

In reviewing an agency's decision to withhold records, the court must determine *de novo* whether the withholding was proper and may, when appropriate, "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

## III. ANALYSIS

### A. Trade West's Public Disclosure Argument

Before addressing the specific FOIA Exemptions invoked by the government, the Court first addresses Trade West's threshold argument that nothing in the bids may qualify for any FOIA exemption because the bids have already been "publicly opened" and therefore belong to the public domain. Dkt. 18 at 26. Trade West points to the requirement in both statute and regulation that sealed bids "shall be opened publicly at the time and place stated in the solicitation." 10 U.S.C. § 3302(a); *see also* 48 C.F.R. § 14.101; Dkt. 26 at 21; Dkt. 18 at 21, 22, 24. As noted above, the Corps structured the procurement as a sealed bidding under FAR Part 14, and opened the bids via telephonic conference on August 22, 2023.

As a general matter, Trade West is correct that "the government cannot rely on an otherwise valid exemption claim to justify withholding information that has been officially acknowledged or is in the 'public domain.'" *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (quoting *Afshar v. Department of State*, 702 F.2d 1125, 1130–34 (D.C.Cir.1983)); *see also id.* at 1280 ("[A] showing of public availability renders the FOIA exemptions inapplicable...."); *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990) ("[W]hen information has been officially acknowledged, its disclosure may be compelled even over an agency's otherwise valid exemption claim.") (citation modified). The problem for Trade West, however, is that most of the material it now seeks was never placed in the public domain under well-established circuit precedent. In order to obtain records "alleged to be in the public domain, [the requestor] has the burden of showing that there is a *permanent* public record of *the exact portions* [the requestor] wishes." *Davis*, 968 F.2d at 1280 (emphasis added). "Prior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure." *Wolf v. C.I.A.*, 473 F.3d 370, 378

(D.C. Cir. 2007) (citation omitted). Accordingly, "publication of part of a document does not put the rest into the public domain." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 510 (D.C. Cir. 2011).

Here, Trade West has not met that exacting standard with respect to most of the information submitted in the sealed bids. At the telephonic bid opening on August 31, 2022, only the name and total bid price of each bidder were read aloud. Dkt. 23-3 at 6 (Johnson Decl. ¶ 7). The Corps then compiled that information into a bid abstract that was posted publicly on SAM.gov. Dkt. 23-7; Dkt. 23-4 at 3 (DiNucci Decl. ¶ 6). The abstract included the names, addresses, bid security amounts, and unit price information of each bidder. Dkt. 23-7. It did not include any of the more detailed documentation needed to satisfy the definitive responsibility criteria. Dkt. 23-7. Trade West neither alleges nor provides any evidence of any other publication disclosing any other information contained in the bids.

At most, then, the Court assumes without deciding that Trade West has shown that the limited information released in the bid abstract and published on SAM.gov entered the public domain. But as to the rest of the contents of the bids, Trade West has failed to carry its burden of showing that the "*specific* information sought by the plaintiff [is] already . . . in the public domain by official disclosure" because it has failed to identify "a *permanent* public record of *the exact portions* [the requestor] wishes." *Davis*, 968 F.2d at 1280 (emphasis added).

Trade West suggests that the D.C. Circuit's stringent requirements for invoking the public doctrine apply only in the national security context. *See* Dkt. 26 at 14–17. This argument misreads the controlling precedent. It is true that some of the D.C. Circuit's public domain caselaw emerged in the intelligence context, where courts have stressed the need for precision and discretion. *See, e.g.*, *Fitzgibbon*, 911 F.2d at 765 (noting that "in the arena of intelligence

and foreign relations there can be a critical difference between official and unofficial disclosures"). But nothing in the governing precedent limits the strict requirements of the doctrine to the national security context; to the contrary, the D.C. Circuit has consistently applied the same criteria in a variety of contexts.

Notably, the public domain doctrine constitutes a "narrow exception" that flows from "the logic of FOIA" itself. *Cottone v. Reno*, 193 F.3d 550, 553–54 (D.C. Cir. 1999). It rests on the commonsense recognition that "where information requested 'is truly public, then enforcement of an exemption cannot fulfill its purposes.'" *Id.* at 554 (citation modified). The D.C. Circuit, accordingly, has "applied the public-domain doctrine across a range of FOIA exemptions," *Citizens for Resp. & Ethics in Wash.* (*CREW*) *v. Dep't of Just.*, 58 F.4th 1255, 1271 (D.C. Cir. 2023), and in a range of substantive contexts. In *CREW v. Department of Justice*, for example, the D.C. Circuit applied the doctrine to requests for "drug-concentration and expiration-date information," and insisted that the claimant "point[ ] to *specific* information in the public domain that appears to duplicate that being withheld. *Id.* (emphasis added) (quoting *Afshar*, 702 F.2d at 1130). Similarly, in *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, the D.C. Circuit applied the doctrine to a request for the commercial information of a utility company and required the claimant to show that "identical information" was already in the public domain. 169 F.3d 16, 19–20 (D.C. Cir. 1999). In short, the Court finds no support in caselaw for the notion that the doctrine is any less demanding in some contexts than others, and Trade West fails to identify any caselaw suggesting that the doctrine should apply differently here.

Finding no support in D.C. Circuit precedent, Trade West invokes a single out-of-circuit decision. *See* Dkt. 18 at 25–26, Dkt. 26 at 14–16, 19–20 (same). In that decision, *R & W*

*Flammann GMbH v. United States*, the Federal Circuit held that a contractor's "unit price information, which was included in its bid for the incumbent contract, entered the public domain upon bid opening." 339 F.3d 1320, 1323 (Fed. Cir. 2003). The Federal Circuit reasoned as follows:

> In this case, the incumbent contract's bids were publicly opened and became immediately available to the public as required by FAR. 48 C.F.R. § 14.402–1(a) (2000) (requiring the bid opening officer to "personally and publicly open all bids"); *id.* § 14.402–1(c) (2000) ("Examination of bids by interested persons shall be permitted...."). When a sealed bid is available to the public, whether or not it is consulted, it enters the public domain and is therefore not confidential under Exemption 4 of FOIA. Flammann's unit price information, which was included in its bid for the incumbent contract, entered the public domain upon bid opening and, therefore, we agree with the trial court that the information did not fall within Exemption 4 of FOIA.

*Id.* (citations omitted). Seizing on that language, Trade West asserts that "*all* information in a sealed bid becomes public upon opening." Dkt. 26 at 15 (citing *Flammann*, 339 F.3d at 1323). The Court is unpersuaded for three reasons:

First, and dispositively, the argument is foreclosed by binding D.C. Circuit precedent. This Court is bound to apply D.C. precedent, and for the reasons explained above, D.C. Circuit precedent disposes of Trade West's argument.

Second, *Flammann*'s holding does not sweep as broadly as Trade West suggests. The only information as to which disclosure was contested before the Federal Circuit was Flammann's "unit price information." *Flammann*, 339 F.3d at 1322–23. The Federal Circuit concluded that because "Flammann's unit price information, which was included in its bid for the incumbent contract, entered the public domain upon bid opening, . . . the information did not fall within Exemption 4 of FOIA." *Id.* at 1323. Although *Flammann* does not specify whether the unit price information had already been published in a permanent record at the time of the dispute, it is undisputed in this case that the unit price information of all three bidders *was*

published in the bid abstract posted on SAM.gov. *See* Dkt. 23-7. As noted above, the Court therefore assumes without deciding that the unit price information belongs to the public domain. At issue is whether everything *else* in the bids—including the definitive responsibility material as to which Trade West's competitors assert a claim of confidentiality—*also* entered the public domain. There is no evidence that the court in *Flammann* had occasion to consider a similar question. *See Olivier v. City of Brandon, Mississippi*, 607 U.S. 552, 565 (2026) ("[G]eneral language in judicial opinions should be read as referring . . . to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering.") (citation omitted).

Third, even the regulatory provisions cited in *Flammann* and upon which Trade West relies undercut its theory that everything in a sealed bid necessarily enters the public domain upon opening. FAR § 14.402-1 provides that "[e]xamination of bids by interested persons shall be permitted *if it does not interfere unduly with the conduct of Government business*." 48 C.F.R. § 14.402-1(c). And while FAR § 14.403 provides that "[a]bstracts of offers for unclassified acquisitions shall be available for public inspection," it specifies that "[s]uch abstracts shall not contain," *inter alia*, "information regarding failure to meet minimum standards of responsibility." 48 C.F.R. § 14.403(b). Rather than treating all submitted material as within the public domain, the FAR assumes that some information might *not* be fit for disclosure.

Finally, it is possible to understand Trade West's argument to posit that, even if the disputed information was never released and never actually entered the public domain, it should have been released and, accordingly, the Corps cannot now complain about a FOIA request that merely demands that the Corps do what it should have done when it opened the bids. That argument fails, however, for the reason just explained. Trade West fails to identify any provision

of the FAR or the governing statute that defines the "opening" of bids in those sweeping terms, and, indeed, the FAR suggests just the opposite. Nor, in any event, is a FOIA suit the proper way to challenge an agency's administration of the procurement process. It is undisputed that the information at issue has not, in fact, been disclosed in a "permanent public record." *Davis*, 968 F.2d at 1280.

The Court, accordingly, rejects Trade West's threshold public domain argument, and proceeds to consider the specific FOIA Exemptions invoked by the government.

**B. Exemption 3**

FOIA Exemption 3 applies to information "specifically exempted from disclosure by statute," provided that the statute in question exempts the material "in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). Here, the Corps argues that the redacted material is exempted from disclosure by two statutory provisions: 10 U.S.C. § 3309(b) and 41 U.S.C. § 4702. Dkt. 18 at 21–23. Both provisions provide, in nearly identical terms, that "[a] proposal in the possession or control of an executive agency may not be made available to any person under section 552 of title 5." 41 U.S.C. § 4702. Trade West responds that those provisions are inapposite because they refer to "proposal[s]," and the redacted materials at issue here are not proposals but "bids." Dkt. 26 at 21. On this issue, Trade West has the better of the arguments.

The Corps concedes, as it must, that "the Solicitation was structured as an invitation for bids under FAR . . . Part 14 sealed-bidding procedures." Dkt. 23-1 at 6; Dkt. 23-3 at 1 (Johnson Decl. ¶ 2). It maintains that 10 U.S.C. § 3309(b) and 41 U.S.C. § 4702 nonetheless apply because the bidders were required to submit, as part of their bids, "proposal-style technical and management content to satisfy [the] definitive responsibility criteria." Dkt. 23-1 at 20.

The Corps' argument fails in view of both (a) the plain text of the statutory provisions invoked and (b) the plain text of FOIA Exemption 3. Both 10 U.S.C. § 3309(b) and 41 U.S.C. § 4702 expressly exempt "proposal[s]"—and only proposals—from disclosure. They do not exempt "proposal-style . . . content" or sealed bids. Accordingly, neither provision is applicable on its face. FOIA Exemption 3, however, requires a precise fit between the material the agency seeks to shield from disclosure and the statutory provisions invoked. Exemption 3 applies only to material that is "*specifically* exempted from disclosure" by statute, and only where the statute invoked "leave[s] *no discretion* on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A) (emphasis added). Particularly where Congress has taken pains to require a precise match and left no room for discretion, the Court will treat "bids" as "bids," and "proposals" as "proposals."

Nor is the Court persuaded that the "bids" at issue here are, in fact, "proposals" within the meaning of 10 U.S.C. § 3309(b) and 41 U.S.C. § 4702. To the contrary, the FAR painstakingly distinguishes between "bids" and "proposals," and it set different rules for each in separate Parts. FAR Part 14 is entitled "Sealed Bidding," and it addresses "Use of Sealed Bidding," (FAR 14.1) "Solicitation of Bids" (FAR 14.2), "Submission of Bids" (FAR 14.3), and "Opening of Bids and Award of Contract" (FAR 14.4). 48 C.R.F. § 14.000 et seq. FAR Part 15, in contrast, is entitled "Contracting by Negotiation," and it governs contracts not secured by sealed bidding. See 48 C.F.R. § 15.000 ("A contract awarded using other than sealed bidding procedures is a negotiated contract (see [FAR] 14.101)."). FAR 15 addresses—and ubiquitously refers to—proposals. It addresses, inter alia, the "Solicitation and Receipt of Proposals and Information" (FAR 15.2), "Requests for proposals" (FAR 15.203), "Handling proposals and information" (FAR 15.207), "Proposal evaluation" (FAR 15.305), and "Proposal analysis" (FAR 15.404).

Here, both the Solicitation and the responsive bids repeatedly characterize the documents at issue as bids. The Solicitation, for example, provides detailed instructions on "BID SUBMISSION," Dkt. 18-2 at 16, directs that "[b]idders shall submit their bids via email," *id*. at 17, and sets a "Bid Due Date and Time" of August 31, 2022, 2:00 PM PDT," *id*. Most tellingly, the Solicitation includes a checkbox indicating that the "TYPE OF SOLICITATION" is either a "SEALED BID" or a "NEGOTIATED (RFP)." *Id.* at 3. The box for "SEALED BID" is checked. *Id.* The common acronym "RFP" is used throughout FAR Part 15 to refer to "requests for proposals." *See*, *e.g*., 48 C.F.R. § 15.203 (addressing "[r]equests for proposals (RFPs)"). Unredacted portions of the bids released by the Corps likewise indicate that they are submitted in response to a "SEALED BID" solicitation, and not a "NEGOTIATED (RFP)." Dkt. 18-4 at 5; Dkt. 18-5 at 3. The Corps expressly elected to structure the Solicitation as a request for sealed bids, and it cannot now argue that it was, in fact, a request for proposals.

The Court therefore concludes that the statutory provisions invoked by the Corps do not "specifically exempt[]" the sealed bids at issue and that Exemption 3 is, accordingly, inapplicable. Ultimately, however, this conclusion makes little difference, since Exemption 4 covers much of the same ground.[2]

**C. Exemption 4**

FOIA Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The parties do

[2] As explained in *Hodes v. U.S. Dep't of Treasury*, 967 F. Supp. 2d 369, 375 (D.D.C. 2013), Congress was aware of the overlap between 41 U.S.C. § 4702 and FOIA Exemption 4 and simply enacted § 4702 to save agencies from the burden of redacting documents that were, in any event, likely exempt. By electing to proceed by way of a bid solicitation, rather than an RFP, the Corps gave up that modest benefit but was able to structure the procurement in the manner that suited it.

not dispute that the requested materials contain "commercial . . . information obtained from a person." They do, however, disagree as to whether the bids contain information that is "confidential."

1. *Confidentiality After* Food Marketing Institute

In *Food Marketing Institute v. Argus Leader Media*, 588 U.S. 427 (2019), the Supreme Court explained that the word "confidential" can bear at least two distinct meanings in the context of FOIA Exemption 4. Under the first meaning, information can be deemed confidential "whenever it is customarily kept private, or at least closely held, by the person imparting it." *Id*. at 434 (citations omitted). Under the second, "confidentiality" requires both that the information is "closely held" and that "the party receiving it provides some assurance that it will remain secret." *Id*. Because both conditions were satisfied in *Food Marketing Institute*, the Supreme Court declined to decide whether the first requirement, standing alone, suffices to invoke Exemption 4 or whether the exemption applies only when both conditions are satisfied. *Id*. at 434–35. In *CREW v. Department of Justice*, the D.C. Circuit considered how Exemption 4 applies in the wake of *Food Marketing Institute*. 58 F.4th 1255, 1269–70 (D.C. Cir. 2023). Like the Supreme Court in *Food Marketing Institute*, the court concluded that it did not need to "decide whether the second condition must be met." *Id.* at 1269.

This Court is not left without important guidance, however. Prior to the Supreme Court's decision in *Food Marketing Institute*, the D.C. Circuit applied different tests to involuntary and voluntary disclosures of confidential information to the federal government. Under *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974), in cases involving involuntary disclosures, the D.C. Circuit limited Exemption 4 to cases in which the information was confidential and its disclosure would cause "substantial harm to his competitive position." But in *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 879 (D.C. Cir. 1991) (en banc), the

court applied a different rule to voluntary disclosures, applying Exemption 4 to information "if it is of a kind that would customarily not be released to the public by the person from whom it was obtained."

*Food Marketing Institute* not only overruled the D.C. Circuit's decision in *National Parks*, but the Court also observed that it could discern no "persuasive reason to afford the *same* statutory term two such radically different constructions." 588 U.S. at 438 (emphasis in original). Those two steps dictate the answer here: the *National Parks* test is no longer good law, the *Critical Mass* rule is good law, and there is "no persuasive reason" to apply a different rule depending on whether a disclosure to the government is voluntary or involuntary. It follows that "*Critical Mass* and its progeny now supply the framework in this Circuit for determining whether voluntarily submitted *and* involuntarily submitted commercial or financial information are 'confidential' under Exemption 4." *Ctr. For Investigative Reporting v. U.S. Customs and Border Protection*, 436 F. Supp. 3d 90, 109 (D.D.C. 2019); *accord Renewable Fuels Ass'n v. U.S. EPA*, 519 F.Supp. 3d 1, 12 (D.D.C. 2021) (concluding that *Critical Mass* remains "remains binding authority" after *Food Marketing*).

2. *The Corps Has Satisfied the* Critical Mass *Standard*

The question, then, is whether the Corps has satisfied the *Critical Mass* standard. It has. As noted above, at summary judgment an agency may meet its burden of showing that a claimed exemption applies through affidavits or declarations. *Nat'l Sec. Counselors*, 960 F. Supp. 2d at 133. The Corps has submitted declarations from representatives of both of Trade West's competitors: J.E. McAmis and SEA Construction. Both competitors were given the opportunity to review the responsive records sought by Trade West and to identify information they customarily and actually treat as private. Dkt. 23-4 at 4 (DiNucci Decl. ¶ 8). Both contractors have averred, under the penalty of perjury, that they customarily and actually treat

the relevant portions of their bid submissions as private and closely held and, therefore, object to the release of that information. Dkt. 25-1 at 2–3 (Vandegrift Decl. ¶ 5–8); Dkt. 25-2 at 1–3 (Buckman Decl. ¶ 4–10).

The Vice President of J.E. McAmis, Scott Vandegrift, explains in his declaration that release of the redacted portions of McAmis's bid would disclose "competitively sensitive" information concerning, *inter alia*, McAmis's "corporate structure, internal planning processes and operational approach to meeting the solicitation requirements." Dkt. 25-1 at 2 (Vandegrift Decl. ¶ 5). The subcontracting materials would reveal "the identity of subcontractors and prospective subcontractors," along with "McAmis's approach to allocating work, identifying sources, and leveraging existing relationships and outreach channels," and would disclose the firm's "relationships and capabilities relevant to quarry access and marine placement/transport." *Id.* (Vandegrift Decl. ¶ 6). All of this is information that McAmis "customarily and actually treats … as private and nonpublic" and "is not publicly disseminated." *Id.* (Vandegrift Decl. ¶¶ 2, 5–6, 8). And even though Circuit precedent does not require the government to provide evidence of an express or implied promise of confidentiality, the Court notes that Vandegrift attests that "[i]n the over 50 years since McAmis has bid work to the government, McAmis has understood that the government kept any documents relating to McAmis' strategy for performing the work (including, its subcontracting plans) confidential because of the competitive nature of the work." *Id.* at 2–3 (Vandegrift Decl. ¶ 6).

Similarly, SEA Construction objects to disclosure of the relevant portions of its bid package. Joelle Buckman, owner of SEA Construction, attests that the portions SEA seeks to have withheld "include[e] terms that, if disclosed, would reveal SEA's procurement posture and constraints (including exclusivity and reliance on the identified supplier for estimated

quantities).” Dkt. 25-2 at 2 (Buckman Decl. ¶ 6). Buckman further attests that the material in question includes “performance/logistics details (e.g., loading/off loading approach, staging assumptions, and other operational particulars) that SEA used to plan how it would execute the work consistent with the Solicitation.” *Id.* (Buckman Decl. ¶ 8). All of this information, Buckman avers, is of the sort that “SEA customarily and actually treats . . . as private and closely held,” and shares “only on a need-to-know basis for bidding, estimating, contract administration, or performance.” *Id.* at 3 (Buckman Decl. ¶ 9).

These declarations suffice to show that the contested information is “customarily and actually treated as private by its owner,” *Citizens for Resp. & Ethics*, 58 F.4th at 1269, and that it is, therefore, “confidential” within the meaning of FOIA Exemption 4, 5 U.S.C. § 552(b)(4). The declarations “describ[e] the justifications for withholding the information with specific detail, demonstrate[e] that the information withheld logically falls within the claimed exemption,” and are “not contradicted by contrary evidence in the record or by evidence of the agency's bad faith.” *ACLU*, 628 F.3d at 619. Nothing more is required.

Trade West mounts only limited resistance as to Exemption 4 and, indeed, did not advance any argument as to Exemption 4 in its motion for summary judgment. *See* Dkt. 18. In its cross-reply and opposition, Trade West does not dispute that SEA and McAmis customarily treat the contested information as confidential, nor does it provide any evidence showing that the third-party contractors have represented their practices in bad faith. *See* Dkt. 26 at 28–31 (discussing Exemption 4). Instead, Trade West retreats to the same public domain argument addressed above, invoking *Flammann* for the proposition that sealed bids enter the public domain upon opening and are therefore categorically ineligible for Exemption 4. *Id.* at 28–30. This argument fails for the same reasons discussed above. *See supra* at 8–12.

The Court therefore concludes that all of the commercial information described by the declarants for SEA and McAmis constitutes confidential information within the meaning of FOIA Exemption 4.

**D. The Corps Satisfies the Foreseeable Harm Requirement**

Even where a FOIA Exemption applies, an agency may only withhold exempt information if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)" or "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8). The Court finds that the sworn declarations submitted by the Corps from McAmis and SEA suffice to establish foreseeable harm to a protected interest.

Vandegrift explains that "[i]f the Government releases the withheld information, J.E. McAmis would suffer competitive harm because competitors (and other market participants) could use the pricing and technical details to undercut McAmis, target its supplier/subcontractor relationships, and calibrate bids using McAmis's non-public approach." Dkt. 25-1 at 4 (Vandegrift Decl. ¶ 12). Competitors could use the information about McAmis's subcontracting plan and its related subcontractor and vendor relationships to "target McAmis's counterparties, replicate McAmis's approach, and reduce McAmis's competitive advantage." *Id.* at 4–5 (Vandegrift Decl. ¶ 14). These harms would be particularly salient in the context of "a market with limited qualified performers for certain specialized requirements." *Id.* at 4 (Vandegrift Decl. ¶ 14). Similarly, Buckmann explains that SEA would suffer a range of foreseeable competitive harms, including undercutting and price targeting, reverse engineering of SEA's bid strategy, disruption of its vendor relationships, and weakened negotiating leverage. Dkt. 25-2 at

3–4 (Buckmann Decl. ¶ 13). Trade West does not provide any argument or evidence to show that SEA and McAmis would not suffer these alleged competitive harms.[3]

The Court, accordingly, concludes that the Corps has shown that release of McAmis and SEA's confidential commercial information would foreseeably cause both contractors the sort of "substantial competitive harm" which Exemption 4 seeks to avert. *McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1190 (D.C. Cir. 2004). It follows that all commercial information "customarily and actually treated as private" by SEA and McAmis is properly exempt from disclosure under FOIA Exemption 4. *Citizens for Resp. & Ethics*, 58 F.4th at 1269.

**E. The Corps Failed to Release All Segregable Material**

Finally, the Court also concludes that the Corps has failed to release all segregable, non-exempt information. FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt . . . ." 5 U.S.C. § 552(b). In reference to the redacted copies already released, the Acting FOIA Officer for the Portland District of the Corps declared that "information duplicative of what was already publicly available (including in the Abstract) was not withheld, and that Exemption 4 redactions were limited to non-public technical, cost, pricing, and internal business information that is customarily and actually treated as private and that would

[3] Trade West asserts that "[t]he competitive harm asserted by McAmis is illusory." Dkt. 26 at 30. But Trade West only disputes the factual accuracy of one particular assertion—namely, McAmis's assertion that Trade West "was attempting to interfere with several of McAmis's contractual relationships with McAmis' vendors and subcontractors in Oregon." Dkt. 25-1 at 5 (Vandegrift Decl. ¶ 16); *see* Dkt. 26 at 30–31 (Trade West's response, disputing Vandegrift's account of the alleged interference). Trade West does not dispute McAmis or SEA's assertion that the firms would suffer future foreseeable competitive resulting from release of their commercial information.

foreseeably cause competitive harm if disclosed." Dkt. 23-4 at 7 (DiNucci Decl. ¶ 14). But as Trade West points out, had the Corps successfully taken those steps, then "at the very least the names and addresses of the bidders would not have been redacted because that information was released in the bid abstract." Dkt. 26 at 11. The Court will therefore direct the Corps to conduct a more careful redaction of the requested documents, and to release any non-exempt and reasonably segregable material contained in the records.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Trade West's motion for summary judgment, Dkt. 18, and **GRANTS** in part and **DENIES** in part the Corps' motion for summary judgment, Dkt. 23. The Corps' motion is granted with respect to the confidential commercial information of McAmis and SEA Construction, which the Court concludes is exempt from disclosure under FOIA Exemption 4. The Corps' motion is denied with respect to FOIA Exemption 3. Trade West's motion is granted insofar as the government is directed to release any non-exempt, reasonably segregable material that was previously redacted. Trade West's motion is otherwise denied.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 30, 2026